Next case on the calendar is Esquivel-Garcia v. Garland Paul O'Dwyer v. I'll go back to this court's repeated statements since De La Vega in 2006, then in Barco Sandoval, and then in Rosario that it lacks jurisdiction to review a discretionary hardship determination. The court lacks jurisdiction because the immigration judge based a discretionary assessment of hardship on petitioner's presentation of facts. Petitioner has a dispute with the immigration judge's fact finding here. These are insufficient to raise the court's jurisdiction. Well, haven't we said if there is a serious mischaracterization of the record that that would qualify as a legal error? That's right. The court has said that. So that's like a narrow path where you would look at the facts to see if there's a serious mischaracterization of the record. So I guess the question is, I think the primary argument in the paper when we heard here was that the amount of family support that he would have stated by the IJ was a mischaracterization of the record. So can you address that? Certainly. Yes, Your Honor. And this court has said, for example, in Mendez, which petitioner cites to throughout his brief and his reply brief, that where the agency totally overlooks evidence or seriously mischaracterizes it, then that would constitute a legal question. And that's simply not what happened here. It's clear that, as Your Honor noted, the immigration judge went through and recounted all of petitioner's testimony, but explicitly stated she was not going to restate word for word every piece of evidence or testimony, and then analyzed all of the factors that he had presented and ultimately concluded that that evidence in her discretionary determination did not demonstrate exceptional and extremely unusual hardship as the statute requires and as the board's precedent requires. And even if the court were to go on and look at this, we would argue again that petitioner hasn't raised a colorable legal claim for the court's jurisdiction. I would point the court to its previous case in Rosario. So in Rosario, the court explored a bit the contours of legal questions. It said that this discretionary determination is exactly the type of value judgment that lies at the core of the board's discretion. It said the board's fact-finding, factor-balancing, and exercise of discretion normally don't involve legal or constitutional questions. Thus, we lack jurisdiction to review them. And our argument is that that is exactly what has happened here. I would also note that if the court were to remand the agency as petitioner requests, he would simply be remanding for the judge to reweigh the same evidence that in her discretion she has already determined did not sufficiently meet the standard. It would thus be cumulative. So for these reasons and those discussed- Counsel, I think this argument's conceded, but I just want to – there does seem to be a discrepancy. I don't know whether it rises to the standard of serious mischaracterization, but the IJ said that serious crimes are uncommon in Zita Cuaro, if I'm mispronouncing that. I think, as your brief points out, that Mr. Esquivel-Garcia testified that serious crime is prevalent in Zita Cuaro. And it seems like there's sort of a ship's passing in the night as to whether we're talking about a local town or a broader region. Sure. So I just want to understand if you agree that there is a factual error in or a mischaracterization of the evidence where the IJ finds that serious crimes are uncommon in Zita Cuaro. We would absolutely argue that that does not constitute a mischaracterization of the evidence. So his testimony about that is at pages 109 through 111 of the record, roughly. And I think some of this can at times be a bit confusing in translation, especially because how Mexico is divided into varying states and municipalities. But it appears that he's testifying largely about the state of Michoacan and that his mother and his family lives in a town called Cresencio Morales, but that there's a larger city nearby called Zita Cuaro. And he goes on to testify that he's surprised to hear of recent violence in his family's town of Cresencio Morales because usually that violence is more prevalent in the city located elsewhere in Zita Cuaro. Exactly. But then the IJ says that serious crimes are uncommon in Zita Cuaro. That's at 36, which just seems, I don't know if it's a translation or kind of like saying New York and not being clear whether you're referring to the city or the state. But that seems contradictory to his testimony, although you're saying that he thought it was unusual that there were crimes in Zita Cuaro. I think that his testimony indicated that he was saying it was unusual to him that there were crimes occurring in his family's town of Cresencio Morales. Exactly. Not that it was unusual that there's crime in Zita Cuaro. I think he was saying that and I think that the immigration judge and the board overall indicate that they recognize that violence is prevalent in the state of Michoacan overall. And I don't think if, you know, the judge said Zita Cuaro instead of Cresencio Morales. The judge did say Zita Cuaro, correct? I believe so. I'm not looking at the exact line of the judge's decision right now, but overall the agency is acknowledging his testimony that there is violence. And again, in the discretionary judgment of the immigration judge and considering all factors including crime cumulatively, she determined that it was not sufficient to meet the hardship standard. But, and he did testify when he was asked about whether this crime happens where his mother and his family lives. He says, this is him testifying. This happens frequently, not within the town itself, but in the part that's the city part. Yes, so maybe not within Cresencio Morales, but within Zita Cuaro. Zita Cuaro. And then we have the IJ saying that crime is uncommon in Zita Cuaro, which again just feels like a little bit of misnomering rather than. I could see how that could be construed as misnomering or misconfusing. But again, we would argue that in no way does that constitute a serious mischaracterization of the record or his testimony. All right, thank you. Thank you, Your Honor. Mr. O'Dwyer, you have three minutes. Yes. So just, excuse me, just to respond to the last issue that Your Honor has raised, which was about the level of crime. And, you know, I realize I may be arguing a point that I have conceded. You did concede it. Yes. Are you unconceding it? I am unconceding it. And I also think, so it was an issue that, I mean, it was an important enough issue that the IJ addressed it in her decision. So clearly it bore on the hardship analysis. So it was not irrelevant. And the IJ's finding seems to be completely at odds with what, and not just a slight mischaracterization, but the opposite of what the testimony was. And I think that in and of itself under this court's precedence. I think the point of the finding, even if there is a little bit of miscommunication, the point of the finding is that his testimony supported that there's not, it's crime is unusual in the town where his family lives. That's true even if she called it Zito Cuaro rather than Crescencio Morales, isn't it? Well, no, I think the testimony was fairly clear that there was a lot of crime in Zito Cuaro and that it was unusual that it happened as close to these. So my understanding from the record is that Zito Cuaro is a municipality and Crescencio Morales is a small town within that municipality. And that, you know, he testified that it was unusual to see such a level of high crime in Crescencio Morales, his small municipality, but it was more common in Zito Cuaro. And then, of course, the IJ finds where there was no crime or that there was not much crime or very little crime in Zito Cuaro, which was the opposite of the testimony. And also the evidence, which even though the judge didn't consider it, she allowed him to testify to it. And that was about a pretty horrific scene where you had hundreds of villagers from Crescencio Morales who went on a vigilante spree and burned someone to death. And that was a couple of weeks before the hearing. And so, I mean, I think that underscores the disconnect between how the IJ characterized the record and what actually happened there. And I think that ties into an argument of error that we've made in our brief, which is that the agency, that the board then said that there was no evidence that his children would be singled out for harm. And as I've said, there's no requirement that he show that his children would individually be singled out for harm as maybe you would do in an asylum case. It's enough to show that the conditions are so bad that they would be at risk. And to the extent that the judge was saying and the board was saying, well, you haven't provided evidence that your children would be at significant risk of harm just from the general country conditions, then I think his, then I think the agency's finding is relevant to that because obviously the agency found incorrectly that there was no crime in the area and then they found, so therefore your children are not going to be at specific risk of harm, whereas the record reflected quite clearly that crime was at a very severely high level. Thank you.